# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

WAYNE WILLIAMS,        )
                             )
Petitioner,            )
                             )
vs.                      )    CAUSE NO. 3:08-CV-81
                             )
SUPERINTENDENT,     )
                             )
Respondent.          )

## OPINION AND ORDER

This matter is before the Court on a Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody filed by Wayne Williams, a *pro se* prisoner, on February 15, 2008. For the reasons set forth below, the petition (DE 1) is **DENIED.**

BACKGROUND

Wayne Williams is serving an aggregate 77-year sentence for convictions in Lake County Superior Court of voluntary manslaughter, criminal recklessness, and habitual offender adjudication.[1] *State v. Williams*, 45G02-0104-CF-80. The Indiana Court of Appeals set forth the facts regarding Williams' convictions as follows:

---

[1] In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Williams' burden to rebut this presumption of correctness with clear and convincing evidence. *Id.*

On April 21, 2001, Williams and his wife Kimberley Williams ("Kimberley")were guests at a barbecue held at the home of Kimberley's nephew Carlos Green ("Green"). Kimberley's sister Celestine Bonita Green ("Nita") was also a guest. Nita referred to Williams as a "crack-head." . . . Kimberley and Nita began to argue, moving from the kitchen to the bedroom.

Williams attempted to follow the sisters and intervene in the argument, but Green temporarily convinced Williams to sit down and "be cool." . . . Subsequently, the sisters returned to the guests, but Williams and Green began to argue. Green told Williams that he was "disrespecting his house" and asked Williams to leave. . . . Green and Williams began to push each other.

Green's uncle, Derrick Summers ("Summers") stepped between them, urging an end to the hostility. However, Williams exclaimed: "Fuck this shit!" and pulled out a gun. . . . Williams fired two shots and the occupants of the room scattered. Williams reached over Summers' shoulder and shot Green in the chest. Williams then ran out the door. Nita followed, asking Williams why he had shot her son. Williams fired two more shots. Nita "felt the heat" from the bullets but was not struck. . . . Green died from the gunshot wound to his chest.

*Williams v. State*, No. 45A04-304-CR-242 (Ind. App. Ct. Nov. 26, 2003.)

On April 23, 2001, the state charged Williams with murdering Green and attempted battery by means of a deadly weapon against Nita. (*Id.* at 3.) On October 1, 2001, the state added a count charging Williams with being a habitual offender. (*Id.*) After a trial, the jury convicted Williams of the lesser included offenses of voluntary manslaughter and criminal recklessness. (*Id.*) Williams admitted to the habitual offender allegation. (*Id.*) The trial court sentenced Williams to 45 years on the manslaughter charge, enhanced by 30 years because of the habitual offender adjudication, and two

years on the criminal recklessness conviction, ordering the sentences to run consecutively. (*Id.*)

Williams appealed, arguing that the court erred in refusing to give his tendered instruction on reckless homicide. (DE 13-4, 13-6.) The Indiana Court of Appeals affirmed. (DE 13-6.) Williams sought transfer to the Indiana Supreme Court on this ground, but his request was denied. (*See* DE 13-3; DE 13-7.)

On July 7, 2004, Williams filed a petition for post-conviction relief alleging ineffective assistance of trial and appellate counsel on numerous grounds. (DE 13-2.) After a hearing at which trial counsel and appellate counsel both testified, the trial court denied the petition. (DE 16, Post-Convict. Tr.; DE 13-8; DE 13-10 at 58-61.) Williams appealed, alleging that his trial and appellate counsel had both rendered ineffective assistance, and also raising a claim regarding alleged misconduct by the prosecutor and police officers. (DE 13-10.) The Indiana Court of Appeals affirmed. *Williams v. State*, 45A03-0701-PC-8 (Ind. App. Ct. Nov. 14, 2007.) Williams sought transfer to the Indiana Supreme Court, which was denied. (DE 13-9.)

On February 15, 2008, Williams filed this federal habeas petition raising the following four claims: (1) the trial court erred by not giving his tendered instruction on reckless homicide; (2) his trial counsel was ineffective; (3) his appellate counsel was ineffective; and (4) the police and prosecutor committed

misconduct that deprived him of a fair trial. (DE 1.)


<u>DISCUSSION</u>

This petition is governed by the provisions of the
Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"). *See Lindh*
*v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district
court to issue a writ of habeas corpus on behalf of a person in
custody pursuant to a state court judgment "only on the ground that
he is in custody in violation of the Constitution or laws or
treaties of the United States." 28 U.S.C. § 2254(a). The court can
only grant an application for habeas relief if it meets the
requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim---
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

Under this deferential standard, a federal habeas court must
"attend closely" to the decisions of state courts and "give them
full effect when their findings and judgments are consistent with
federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state

court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Williams*, 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under

this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence, the petitioner must come forward with new, reliable evidence and must establish that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

Claim One

In claim one, Williams asserts that the trial court erred in failing to give his tendered instruction on reckless homicide. (DE 1 at 4.) In his petition, Williams does not couch this claim in terms of federal constitutional law, and instead argues that the trial court erred in its application of Indiana state law regarding jury instructions. (*See id.*) In his traverse, Williams makes reference to the Fourteenth Amendment in connection with this claim, but the substance of his argument again focuses on the application of state law. (*See* DE 20 at 7-9.) Relief in a federal

habeas corpus proceeding is only available for a violation of the U.S. Constitution or laws, and errors of state law are not cognizable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, Williams' claim regarding an error of state law is not cognizable in this proceeding.

To the extent Williams has asserted a cognizable Fourteenth Amendment due process claim, the claim would be procedurally defaulted in any event because he did not raise this claim in one complete round of state review. Although Williams raised a claim on direct appeal based on the trial court's failure to give his tendered instruction, the claim was premised entirely on state law. (*See* DE 13-4, 13-7.) To fairly present a claim in state court, the petitioner must present both the operative facts and the legal principles that control the claim. *Baldwin*, 541 U.S. at 29. This includes alerting the state court "to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). Williams does not provide any ground for excusing his procedural default, and accordingly, even assuming claim one was cognizable, it is procedurally defaulted.

Claim Two

Next, Williams alleges that his trial counsel, Teresa Hollandsworth, was ineffective. (DE 1 at 4.) "The Sixth Amendment

8

entitles criminal defendants to the 'effective assistance of counsel'---that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, ---U.S.---, 130 S. Ct. 13, 16 (2009). The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where it is expedient to do so, a court may resolve an ineffective assistance claim solely on the prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

Here, Williams raises six separate grounds of ineffective assistance, specifically, that trial counsel was ineffective in

failing to: (1) conduct a "professional investigation" into the facts and circumstances of the case; (2) interview him regarding his version of the crime; (3) ask the court to appoint an investigator; (4) ask the court to appoint a firearms expert; (5) prepare for trial and interview available witnesses; and (6) properly cross-examine the numerous eyewitnesses to the shooting. (DE 1 at 4; DE 20 at 10-57.)

The respondent argues that grounds 3, 4, and 6 are procedurally defaulted because they were not raised in one complete round of state review. (DE 14 at 9.) For exhaustion purposes, each ground of ineffective assistance is considered a separate claim. *See Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Thus, "the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Id.; see also Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (to exhaust an ineffective assistance claim the petitioner must have "identified the specific acts or omissions of counsel that form the basis for her claim of ineffective assistance."). Here, Williams raised various grounds of ineffective assistance of trial counsel in the post-conviction proceedings, but a review of the record reveals that he did not raise the specific grounds referenced above in his petition to transfer filed with the Indiana Supreme Court. (*See* DE 13-13 at 2-6.) Because Williams did not raise grounds 3, 4, and 6 in one complete round of state review,

these claims are procedurally defaulted.

A procedural default may be excused by a showing of cause and prejudice. *Wainwright,* 433 U.S. at 90; *Wrinkles*, 537 F.3d at 812. Williams appears to argue in his traverse that his procedural default should be excused based on ineffective assistance of his appellate attorney. (DE 20 at 57.) Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default. *Coleman*, 501 U.S. at 753-54; *Wrinkles*, 537 F.3d at 812. When a habeas petitioner seeks to excuse a procedural default by claiming ineffective assistance of counsel, the "cause and prejudice" test from *Wainwright* is replaced by the test for ineffective assistance set out in *Strickland*. *See Wrinkles*, 537 F.3d at 812; *see also Murray*, 477 U.S. at 479 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland*. . . there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray*, 477 U.S. at 490. If the ineffective assistance claim being used to excuse a procedural default was itself not properly raised in state

court, "the petitioner will be fully defaulted."[2] *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).

Here, Williams was not represented by counsel in the post-conviction proceedings, nor was he entitled to counsel at that stage, and so the failure to include certain claims in the petition to transfer cannot be attributed to attorney error. To the extent Williams is arguing that appellate counsel should have raised these claims on direct review, there would have been no basis for counsel to do so since they were contingent on evidence that was outside the trial record, namely, trial counsel's testimony, which could only be developed in a post-conviction proceeding. At any rate, Williams did not independently exhaust this claim in one complete round of state review. Although Williams raised various grounds of ineffective assistance in the state post-conviction proceedings, he did not raise a claim premised on appellate counsel's failure to raise a claim of ineffective assistance against Hollandsworth on the above grounds. (*See* DE 13-13 at 8.) Williams has not established any basis to excuse this second level of default, and therefore, his claim is fully defaulted.

Williams also argues that his procedural default should be

_____

[2] The Seventh Circuit has observed that this requirement, whereby an ineffective assistance claim used as cause to excuse a procedural default must itself have been exhausted, can result in a "tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice---a result that has an attractive power for those who like difficult puzzles." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

excused under the miscarriage of justice exception. He argues that he can meet this standard because he "has always claimed that he never shot anyone and never attempted to shoot anyone during the evening in question." (DE 20 at 64.) In support of his actual innocence claim, he points to conflicting evidence in the record, including eyewitness testimony about the events that occurred inside Green's home that evening and the ballistic evidence regarding the shell casings and the bullet recovered from the victim's body which did not match. (*Id.*) However, all of this evidence was known to the jury; the jury weighed all the evidence and found Williams guilty. It is not the task of this Court to consider all the evidence anew and reach its own determination of guilt or innocence. Williams has not come forward with any new evidence or established that "no reasonable juror would have found [Williams] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Contrary to Williams' assertions, there is ample evidence in the record from which a reasonable jury could have found him guilty, including the eyewitness testimony of his own wife who saw him point a gun and then fire at Green. Accordingly, Williams falls short of proving actual innocence, and for these reasons the Court cannot reach grounds 3, 4, and 6 on the merits.

That leaves Williams' claims that counsel was ineffective in the following ways: failing to conduct a proper investigation into the facts and circumstances of the case; failing to interview him

regarding his version of events; and failing to ask the court to appoint a firearms expert. All of these claims center around trial counsel's alleged failure to support Williams' version of what occurred that evening. At trial, multiple witnesses, including Williams' wife Kimberley, testified that Williams pointed his gun directly at Green and then shot him in the chest. (DE 16, Trial Tr. at 88-422.) Williams proposed an alternate theory that a second gun had been present in the home that night and that someone other than him had fired the fatal bullet at Green; Williams did not testify at trial and so this theory was premised in large part on ballistics evidence showing that a .22 caliber long bullet recovered from the victim did not match two .22 caliber short bullet casings found inside Green's home. (*Id.*) The gun Williams had in the home that night was never recovered. *Williams,* slip op. Nov. 14, 2007, at 9.

The Indiana Appellate Court properly identified the *Strickland* standard as governing the resolution of Williams' ineffective assistance claims. *Williams*, slip op. Nov. 14, 2007, at 7. Accordingly, this Court must determine whether the state court's application of *Strickland* was unreasonable. The Indiana Appellate Court concluded that, contrary to Williams assertions, his counsel regularly corresponded with him, thoroughly prepared for trial, vigorously cross-examined the state's witnesses, and otherwise zealously advocated on his behalf throughout the proceeding. *Id.* at

14

8-10. The record supports the Indiana Appellate Court's conclusion.

First, the record shows that Hollandsworth thoroughly prepared for trial. She engaged in extensive pretrial discovery, including deposing the state's multiple civilian eyewitnesses, as well as the primary detective assigned to the case and the crime scene investigator. She demonstrated a thorough familiarity with the facts and circumstances surrounding the shooting in the course of these depositions. (DE 16, Post-Convict. Tr. at 15-80; Appellant's Appx. at 53-120, 123-29, 132-218.) After receiving the ballistics report, counsel personally drove to the state police headquarters and questioned the state's firearms examiner for several hours; he commented to her that it was the first time he could recall a defense attorney personally interviewing him prior to trial. (DE 16, Post-Convict. Tr. at 17-19, 26-27.) She also used her office's investigator to assist her in pretrial investigation. (*Id.* at 22.) The record also shows that counsel communicated with Williams prior to trial and was fully aware of his version of events. (*Id.* at 28-32.) To the extent counsel did not directly ask Williams questions that he thinks were relevant, such as where he hid the gun or whether he shot Green, she did so for legitimate strategic reasons; she expressed concern that knowing too much information about Williams' conduct that night would actually hinder her defense, because her ethical obligations prevented her from taking any actions (such as putting Williams on the stand or questioning

witnesses) that she knew would suborn perjury. (DE 16, Post-Convict. Tr. at 43.)

In addition to her thorough preparation for trial, counsel also successfully sought and obtained suppression of Williams' post-arrest statements to police, in which he admitted having a gun at Green's house that night even though he was on parole for another offense. (DE 16, Trial Tr. at 11-66.) At trial, counsel extensively cross-examined the state's eyewitnesses and used their prior depositions and statements to police to impeach them and point out inconsistencies in their testimony. (*Id.* at 112-32, 158-80, 189-94, 220-36, 241-46, 269-90, 301, 342-80, 409-21, 448-35, 478-86, 511-15.) She argued in closing that the witnesses were inconsistent about what had occurred and were not credible.(*Id.* at 569-90.)

Counsel also highlighted the ballistics evidence indicating that someone else in the home had a gun, and proposed an alternate theory of what occurred. Specifically, she elicited testimony from the state's firearms expert that .22 long caliber bullets, the type of bullet recovered from Green's body, could not fit in a .22 short caliber firearm, which was the type of casings found in the home; she also elicited testimony from the state's expert that the bullet found in Green's body had not come from the casings that were recovered. (*Id.* at 511-15.) She used this testimony to argue to the jury that a second gun had been present and had been used by

someone other than Williams during the incident to shoot Green.
(*Id.* at 579-89.) She argued that the individuals inside the home
that night were pointing the finger at Williams, who was related to
them by marriage, in an attempt to cover for a blood relative who
had actually committed the shooting. (*Id.*)

Counsel also obtained a self-defense instruction supporting
the defense theory, which was no small feat given that there was
little evidence to support an alternative theory (such as testimony
from Williams) and all of the eyewitnesses, including Williams' own
wife, testified that he fired the fatal shot directly at Green and
that no one else had a gun. (*See* DE 16, Post-Convict. Tr. at 44-
45.) Due to counsel's efforts, the jury ultimately declined to
convict on murder and attempted battery, instead convicting on the
lesser-included offenses of voluntary manslaughter and criminal
recklessness.

Although Williams faults counsel for not obtaining a defense
ballistics expert, his gun was never recovered and there is no
evidence that it was available for testing, nor is there any
evidence that a defense expert would have provided more favorable
testimony than that already provided by the state's own firearms
expert. Based on the record, Williams has not shown that the result
of the proceeding would have been different if his counsel had
retained a ballistics expert.

Williams also faults counsel for not exploring the identity of

the person who first called 911 to inform the police about the shooting. Although Williams does not know the identity of the caller or the content of their potential testimony, he believes the witness would have provided further support of his self-defense theory; he points to a police report reflecting that the caller said there were "two male subjects shooting at each other." (DE 20-5.) Although counsel could not recall investigating the identity of the 911 caller, she did depose Marcia McCollum, Green's next door neighbor, who testified that she called the police that night when she looked out her window and saw a man running backwards down the street shooting. McCollum did not see the man's face nor did she know who the man was. *Williams*, slip op. Nov. 14, 2007, at 10. It is not clear from the record whether there was an additional call to 911 by someone other than McCollum, or whether McCollum's report of a man shooting was incorrectly recorded by the dispatcher as two men shooting at each other.

Regardless, based on the dispatch report, Williams' counsel elicited testimony during her cross-examination of the police officer who responded to the call that he had been dispatched on a call of "two males shooting at each other." (DE 16, Trial Tr. at 431-32.) Given that this information was already before the jury, and Williams can only speculate about what additional information the 911 caller would have provided, he has not established that the result of the proceeding would have been different if counsel had

further explored this issue.

Williams similarly faults counsel for not interviewing some "little girls" who were in the neighborhood that night. (DE 1 at 6; DE 20 at 28.) Williams believes these girls could have provided testimony that there was more than one person shooting in the home. (*Id.*) He points to the deposition testimony of McCollum, who testified that the night of the shooting two or three young girls came up to her door and asked to come in saying, "[T]hey are out here with these guns." (*Id.; see also* DE 16, Appellant's Appx. at 181-82.) McCollum testified that she thought the girls were joking and closed the door; some time later she heard a ruckus outside, looked out the window, and saw a man running away shooting. (DE 16, Appellant's Appx. at 181.) Even assuming the girls could have been located, their vague statement does not tend to show that there was more than one gun in Green's home that night, or even that they were referring to this same incident. Moreover, there was already evidence before the jury that there may have been someone else in the home with a gun that evening, and so Williams has failed to show that the result of the proceeding would have been different if counsel had located and interviewed these individuals.

In summary, the record shows that Williams' trial counsel thoroughly prepared for trial and vigorously advocated for Williams throughout the proceeding. The Indiana Appellate Court's resolution of this claim was not unreasonable, and accordingly, the claim is

denied.

Claim Three

Williams next claims that his appellate attorney, Marce
Gonzalez, was ineffective. (DE 1 at 5.) An ineffective assistance
of appellate counsel argument is also subject to the *Strickland*
analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000).
To prevail on such a claim, the petitioner must show that appellate
counsel's performance was "unreasonably deficient" and that this
inadequacy resulted in prejudice. *Id*. at 790. On the deficiency
prong, the petitioner must show that counsel failed to present a
significant and obvious issue on appeal; counsel "need not (and
should not) raise every nonfrivolous claim, but rather may select
from among them in order to maximize the likelihood of success on
appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Where
appellate counsel has presented some arguments on appeal but not
others, it will be difficult to demonstrate that counsel was
incompetent. *Id*. On the prejudice prong, the petitioner must
demonstrate "a reasonable probability that his case would have been
remanded for a new trial or that the decision of the state trial
court would have been otherwise modified on appeal," if the claim
had been presented to the appellate court. *Howard*, 225 F.3d at
789-90.

Here, Williams asserts that appellate counsel was ineffective

in: (1) "failing to develop the [r]ecord" because "material and relevant evidence had been omitted from the trial record"; (2) failing to raise a claim that the police did not conduct a "professional investigation" into the crime; and (3) failing to raise a claim of trial counsel's ineffectiveness based on her failure to "perform investigations and interviews which were obviously needed in this case." (DE 1 at 5.)

The respondent argues that grounds two and three are procedurally defaulted because Williams did not raise them in one complete round of state review. (DE 14 at 16.) A review of the record reflects that although Williams raised various claims of appellate counsel's ineffectiveness in the post-conviction proceedings, the only claim he raised in his petition to transfer filed with the Indiana Supreme Court was his claim that appellate counsel failed to develop the record. (*See* DE 13-13 at 8.) Because Williams did not raise grounds two and three in one complete round of state review, those claims are procedurally defaulted. Williams appears to argue that his procedural default should be excused based on the miscarriage of justice exception. (DE 20 at 65.) However, for the reasons discussed above with respect to claim two, Williams fails to satisfy this exception. Accordingly, the Court does not reach these two grounds on the merits.

Williams did raise ground one in the state post-conviction proceedings, and the Indiana Appellate Court determined that

Williams failed to show deficient performance or resulting prejudice from appellate counsel's alleged failure to "develop the record" on appeal. *See Williams*, slip op. Nov. 14, 2007, at 10-11. This determination was not unreasonable.

At the post-conviction hearing, appellate counsel described how he thoroughly reviewed the trial record and determined that there was only one viable issue for appeal, namely, the trial court's rejection of Williams' tendered jury instruction. (DE 16, Post-Convict. Tr. at 48-60.) Based on the solid performance of Williams' trial counsel, the fact that Williams was not convicted of the more serious charges, and the significant evidence of his guilt, appellate counsel's assessment was not unreasonable. Williams complains that appellate counsel did not "develop the [r]ecord with missing evidence from the crime scene." (DE 20 at 58.) However, on direct appeal the court's review is limited to the trial record itself, and so there would have been no basis for appellate counsel to attempt to present the appellate court with

additional witness testimony or other such evidence.[3] *See Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998); *see also In re A.P.*, 882 N.E.2d 799, 802 n.1 (Ind. App. Ct. 2008)("[I]t is improper to support an appellate argument with evidence that is outside of the trial court record."). Moreover, it is clear from the post-conviction hearing transcript that appellate counsel anticipated Williams would later file a post-conviction petition, and he appropriately did not wish to foreclose that avenue of relief by raising potential arguments on appeal that needed further evidentiary development. (DE 16, Post-Convict. Tr. at 56-57.) Based on the record, the Indiana Appellate Court's resolution of Williams's ineffective assistance of appellate counsel claim was not unreasonable. Accordingly, claim three is denied.

Claim Four

---

[3] Indiana does provide a procedure, referred to as a *Davis/Hatton* petition, whereby appellate counsel can seek leave to have the direct appeal held in abeyance while the defendant pursues post-conviction relief; after the trial court rules on the post-conviction petition, the appellate court consolidates the two cases for review. *Slusher v. State*, 823 N.E.2d 1219, 1222 (Ind. Ct. App. 2005); Ind. App. R. 37. Williams' appellate counsel stated that he considered and rejected this option as not warranted under the circumstances of this case. (DE 16, Post-Convict. Tr. at 54-55.) Williams appears to fault counsel for not taking this route, but as the Indiana Supreme Court has observed, "appellate counsel's use or non-use of such a proceeding does not have substantive significance, but serves only to raise at an earlier time an issue that otherwise would be available for later presentation in post-conviction proceedings." *Thomas v. State*, 797 N.E.2d 752, 755 (Ind. 2003).

Finally, Williams claims that the police and prosecutor engaged in misconduct that denied him a fair trial. (DE 1 at 6.) Williams cites a long list of transgressions, but in essence his complaint is that the police and prosecutor failed to conduct a thorough investigation into whether there was a second shooter and wrongfully "concealed" evidence of a second shooter, such as the 911 dispatch report and the alleged statement of the young girls who showed up at McCollum's door the night of the shooting. (*Id.*)

The respondent argues that this claim is procedurally defaulted. (DE 14 at 17-18.) A review of the record reveals that Williams raised this claim in his post-conviction proceeding, but did not raise it on direct appeal, even though the claim was premised entirely on police reports and other documents that were part of the trial record. Accordingly, the Indiana Appellate Court found that the claim had been waived. *Williams*, slip op. Nov. 14, 2007, at 12. A federal habeas court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, including a state procedural rule. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). A finding of waiver by the state court is considered an adequate and independent state ground. *Id*. Accordingly, this claim is procedurally defaulted.

Williams again argues that the court should excuse his procedural default under the miscarriage of justice exception. (DE

20 at 64-66.) However, for the reasons stated above, Williams fails to satisfy this exception.[4] Accordingly, the Court does not reach claim four on the merits.

CONCLUSION

    For the reasons set forth above, the petition (DE 1) is **DENIED**.


DATED: January 12, 2010              /s/ RUDY LOZANO, Judge
                                     United States District Court

---

    [4] It is not clear whether Williams is also asserting that his procedural default should be excused based on the ineffective assistance of appellate counsel in failing to raise this claim on direct review. (*See* DE 20 at 57.) Williams did not independently exhaust such a claim in the state proceedings, and so he would be fully defaulted in any event.